(C. D. 1331)

W. C. Sullivan & Company v. United States

248

United States Customs Court, Second Division

(Decided June 7, 1951)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

LAWRENCE, Judge: The merchandise in controversy is invoiced as "Agricultural Implement Parts—Storm Hats—2880—For Farm Tractor Use."

The collector of customs imposed duty upon the merchandise at the rate of 45 per centum ad valorem as provided in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397) for articles or wares not specially provided for, in chief value of base metal.

Plaintiff relies upon its claim that the merchandise is entitled to freedom from duty pursuant to the provision in paragraph 1604 of said act (19 U. S. C. § 1201, par. 1604) for "Agricultural implements: * * * whether in whole or in parts, including repair parts: * * *."

At the trial but one witness was called who testified that he had been secretary since 1941 of the H. M. Sheer Co., which is the consignee of the imported articles; that the company distributes equipment for use by farmers; and that he is familiar with the importation here in controversy, which is similar to an article manufactured in the United States by his company. The witness produced a sample of a storm hat manufactured by his company, which he stated "is similar in almost every respect to the one which we imported." It was received in evidence as illustrative exhibit A. A catalog was also offered in evidence, and so much of it as consists of the outside cover and a portion of page 39 of the catalog, which illustrates a tractor exhaust pipe cover like the storm hats in the importation covered by the protest, was received and marked exhibit 1. Based upon an examination of the exhibits, a storm hat may be described as consisting of a die-cast aluminum ring about an inch in height,

the lower edge being about 3¾ inches in diameter, the top rim about 3½ inches in diameter, upon which is a closely fitted hinged lid of the same kind of metal. The metal ring is equipped with three screws by means of which the device may be adjusted and fastened to the tops of various-sized exhaust pipes on farm tractors. It appears from the record that the storm hats are utilized "to keep rain and dirt, and so forth, out of the exhaust pipe, and from there, getting down into other parts of the motor" and to prevent rusting of the valves.

The witness testified that he had seen the article used on the exhaust pipe of a farm tractor, which latter is used in operating farm machinery, stating that "It may pull a plow, a harrow, a disc harrow, it may pull a hammer mill in a cornfield, and there are a great many uses for it. Generally it is used in place of horses, now, on a farm."

In explaining why farm tractors have an upright exhaust pipe, the witness testified:

Well, the principle [sic] feature there is because it goes over rough land in the first place, and it prevents fire coming from the exhaust. In other words, a tractor is working in a field of straw, for example; it is liable to set fire to the straw.

The witness also testified that the article "was designed for use on farm tractors, and it is too light to be used on heavy—very heavy tractors. It is liable to break in using it on the exhaust of a heavy tractor. And it was designed originally for use on farm tractors."

In explaining how the device actually operates, the witness stated, "After the engine of the tractor starts, the exhaust fumes from the exhaust pipe raise the lid and allow the fumes to escape. * * * It is put on the exhaust pipe in such a way that the lid tilts towards the operator, and the deflection makes the fumes come out in such a way that they do not come into the operator's face. * * * When the motor stops, why the lid is counterbalanced so that it drops quite easily. * * * When the motor is not in operation, it forms a lid over the exhaust pipe."

While it appears from the record that the article has been marketed but a few years, its use, in the experience of the witness, has been as above described, but he testified that "* * * we recommend its use for gasoline pump engines on the farm too, which also have an upright exhaust. It is recommended for that use, and also for other types of farm machinery which use an upright exhaust," such as corn pickers, power combines, and hay balers.

It is the belief of plaintiff that the testimony amply supports its contention that the importation is entitled to free entry as parts of agricultural implements.

A case which is frequently cited as laying down the guiding principle as to what constitutes a "part" is *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. The factual

question before the court in that case was whether certain wooden tripods should be classified as *parts* of cameras; and, while it appeared from the record in that case that when a tripod and a camera are used together each "performs its separate function without loss of any of its essential characteristics," the court concluded that although it might be necessary to use tripods as supports for certain cameras, nevertheless, tripods are not for that reason parts of such cameras. The rule as to what constitutes a "part" of an article which was laid down in that case and has been followed many times since is that "a 'part' of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.*" [Italics quoted.] Citing *Welte & Sons* v. *United States,* 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States,* 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker,* 16 Ct. Cust. Appls. 548, T. D. 43266.

The court also stated in that case that "The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other." Citing *Columbia Shipping Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.,* 11 Ct. Cust. Appls. 540, T. D. 39680.

To illustrate the principle above stated, the court pointed out that:

Typewriter desks are designed and constructed to be used with typewriters, and frequently have attachments so that typewriters may be joined to them. Furthermore, typewriters must be rigidly supported in order that they may be used properly, yet no one would suggest that ordinary typewriter desks were integral, constituent, or component parts of typewriters, although, no doubt, users of ordinary typewriters would testify that typewriter desks were essential to the proper use of such typewriters.

To quote another illustration given by the court—

A pianist would undoubtedly testify that a piano bench or stool was essential to the proper use of a piano. It is obvious, however, that a piano bench is not an integral, constituent, or component part of a piano.

and, further, the court observed:

Stationary engines require rigid supports. Such supports may be made of wood, concrete, or other material. When in use, the engine is attached to its support, but such support is, obviously, not a part of the engine. The two articles are merely designed to be, and are, used together.

Applying the doctrine of the *Willoughby* case, *supra,* it would seem that the so-called storm hats which form the subject of this controversy are not, in a tariff sense, parts of agricultural implements because they are not integral, constituent, or component parts, with-

out which the article to which they are to be joined could not function as such article, but rather are they in the nature of accessories for use in conjunction with agricultural implements, and possibly with other types of machines. See *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, cited by the court in the *Willoughby* case, *supra*.

In holding that certain endless belts were parts of machines, the court in the *Schweitzer* case, *supra*, made this significant observation regarding the distinction between a part and an accessory:

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is used as an essential part, and if the machine is incapable of performing its ordinary and proper functions without it, it will be considered, at least for tariff purposes, as an integral part of the machine.

We have examined the various cases cited by counsel in their briefs, but find it unnecessary to review them here.

Upon the record before us we are of the opinion that the so-called storm hats are accessories rather than parts, within the reasoning of the *Schweitzer* case, *supra*, and that their use is "casual, auxiliary, or optional." They are not integral, constituent, or component parts, as outlined in the *Willoughby* case, *supra*.

For the reasons above stated, and upon the authorities cited, we hold that the imported storm hats are not entitled to free entry as parts of agricultural implements, but were properly classified for duty by the collector of customs as articles or wares not specially provided for, in chief value of base metal, and subject to duty at 45 per centum ad valorem under paragraph 397, *supra*.

The protest is overruled in all respects, and judgment will issue in harmony with the views herein expressed.