(C. D. 1989)

BRITISH AUTO PARTS, INC.
NATIONAL CARLOADING CORP. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 29, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Jr.,* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, relate to certain rear-view automobile mirrors, represented by the invoice descriptions and item numbers set forth in said schedule "A." The articles in question were assessed with duty at the rate of 50 per centum ad valorem under paragraph 230 (b) of the Tariff Act of 1930, which reads as follows:

Glass mirrors (except frames or cased mirrors in chief value of platinum, gold, or silver), not specially provided for, not exceeding in size one hundred and forty-four inches, with or without frames or cases, 50 per centum ad valorem.

Plaintiffs claim that this merchandise is properly classifiable as parts of automobiles under paragraph 369 (c) of the Tariff Act of 1930, as modified by T. D. 51802, carrying a dutiable rate of 12½ per centum ad valorem, and reading, so far as pertinent, as follows:

Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b) of paragraph 369, Tariff Act of 1930, finished or unfinished, not specially provided for: * * *.

Paragraph 369 (b) of the Tariff Act of 1930 includes provisions for automobiles, automobile chassis, and automobile bodies, whether finished or unfinished.

The record discloses that there are three types of mirrors involved herein, i. e., reversible mirrors (item 4F and 4C); side mirrors (items 674C, 675C, 874C, and 875C); and Volkswagen mirrors (items 100,

101, 880C, and 881C). All of the mirrors in question are exterior mirrors, and it has been stipulated between the parties that these mirrors are not in chief value of glass.

One witness testified. It appears from his testimony that, since 1952, he has been an importer and distributor throughout the United States of automobile parts and accessories from England, and that, between 1948 and 1952, he was the service manager for British Auto Parts, Inc., the importer of the merchandise in question. Since 1947, when the foreign car industry was introduced into the United States, the witness "developed the parts program and also the service program for servicing new cars and customer complaints." He was also a salesman at various times between 1947 and 1952 and worked at every phase of work associated with an automobile agency that handled "essentially British cars which comprised a fair percentage of all the foreign cars imported with British cars." The witness' testimony concerning the various types of mirrors under consideration and their respective uses will support the following summation.

All of the mirrors in question were specifically made for, and chiefly, if not exclusively, used on certain models of automobiles of foreign manufacture. The reversible mirror (items 4F and 4C) and the side-view mirrors (items 674C, 675C, 874C, and 875C) are essentially fender mirrors. Each is fitted with a bolt through the base of the mirror, and, by drilling a hole through the fender, the mirror is directly bolted thereto. The reversible mirror is susceptible of use on both the right-hand and the left-hand fenders, but the side-view mirrors are made for use on either the right-hand or the left-hand fender. These mirrors are chiefly used on British vehicles, particularly sedans and convertible models of sports cars; specifically on "MG's, Austin-Healey's, Jaguars, Hillmans, Austins of various types." (R. 14.) Referring to the serviceability of these mirrors on the convertible models of sports cars, the witness described their use on the "MG" as follows (R. 15):

Well, the MG first came out or was sold by us in 1948 in the T. C. model. This particular model had a definite blind spot; the glass or plastic window in the rear of the car was small, otherwise it definitely didn't cover the whole of the rear of the top. Besides that, the type of material used in the car was such that within a very short space of time, less than one-quarter, the plastic turned yellow, cracked and became opaque which made it virtually impossible to see out the rear window, and the requests were very numerous and almost mandatory to have a side-view mirror. There was a mirror designed at that time, designed specifically for the car to be fit to the chrome bracket that exists on either side, but many of them people preferred a ringed mirror or fender mirror which we supplied them with.

The condition that existed with the "MG" was also present in the other models of convertible sports cars mentioned by the witness, hereinabove set forth.

Explaining the reason for the rear-view exterior mirrors on sedans of British manufacture, the witness stated as follows:

\* \* \* All of these cars had a problem of obscured visibility on the left-hand side specifically. One of the main reasons was that in trying to get to the bottom of the problem we discovered that because the cars were narrow, the visibility through the rear interior mirror was partially obscured and we ended up with a blind spot in the left quarter section of the car behind the left rear wheel.

The articles identified as Volkswagen mirrors (items 100, 101, 800C, and 881C) are specifically designed for use on Volkswagens. They are installed on the door hinge, being fitted thereto through replacement of the hinge pin. The Volkswagen mirrors are used on either the right-hand or the left-hand door, and their purpose is to provide an adequate rear view, enabling the driver to see approaching cars, particularly to get "the full scope of the road in the back." (R. 11.)

While the record will support the positive statement that these mirrors are designed for use on automobiles, the testimony of the witness, under questioning by the court, discloses that, in actual use, these mirrors are merely supplementary to mirror equipment supplied by the manufacturer of the automobiles. The witness' testimony on that point is as follows:

JUDGE WILSON: Were these mirrors imported designed solely for use on automobiles as rear-view mirrors?

THE WITNESS: Yes.

JUDGE WILSON: Do you know of automobiles that have various types such as you describe; do you know whether these vehicles can operate without these mirrors, such as are involved before the Court now?

THE WITNESS: Yes, I do know of automobiles who do operate without the side-view mirrors.

JUDGE WILSON: And is it a fact that these mirrors are merely available for those that want to use them as an accessory?

THE WITNESS: Yes, they are available for people who want to use them, but they are also brought in as the only mirror on more than one vehicle.

JUDGE WILSON: They are not standard equipment, on the whole?

THE WITNESS: Not on the whole. Some cars they do come on the standard equipment.

JUDGE WILSON: Generally, you sell them to those that desire them as a special accessory, isn't that so?

THE WITNESS: Yes.

The principle, governing the tariff classification of imported merchandise as a part of an article, is succinctly stated in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, which involved certain tripods, composed of wood. In rejecting the importer's claim for classification of such tripods

as parts of cameras, the Court of Customs and Patent Appeals reasoned as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* * * *

The mere fact that two articles are designed and constructed to be used together does not necessarily make either a part of the other. * * *

\*     \*     \*     \*     \*     \*     \*

It is evident, we think, from the character of the articles and from the testimony in the case, that, when a tripod and a camera are used together, each "performs its separate function without loss of any of its essential characteristics." Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity. * * *

We are of opinion, therefore, that, although it may be necessary to use *tripods* as *supports* for the involved *cameras*, tripods are not, for that reason, integral, constituent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are designed to be used together, one as a support for the other, and that they are chiefly so used. [Italics quoted.]

The rule of construction, as set forth in the foregoing quotation, was applied in *United States* v. *E. Leitz, Inc.*, 26 C. C. P. A. (Customs) 418, C. A. D. 49, that involved certain photographic range finders. In holding that the articles were not classifiable as parts of cameras, our appellate court quoted from the *Willoughby Camera Stores, Inc.*, case, *supra*, and then stated as follows:

So in the case at bar, when the range finder here involved and the camera for which it is designed are used together, each "performs its separate function without loss of any of its essential characteristics," and "whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity."

The evidence here shows that it is optional with the purchaser to buy the camera with or without the range finder, and appellee's catalog shows that the range finder is offered for sale separately from the camera.

Important in the disposition of the issue now before us is the case of *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602, which involved certain superchargers, manufactured and specially designed for installation in Ford and Austin automobiles. The court found, from the undisputed testimony—

* * * that the imported superchargers are designed specifically for use on automobiles; that extensive alterations in the engines are necessary to install the superchargers; that Ford automobiles and Austin automobiles as manufactured do not have superchargers; that some makes of automobiles have been manufactured with superchargers; that superchargers are made for automobiles other than Fords or Austins, and are also sometimes installed on trucks and busses; that the Ford engine and the Austin engine will operate if no supercharger has been installed therein; and that once a supercharger has been installed in a Ford or Austin engine the engine will not operate if the supercharger fails.

Our appellate court held that such superchargers are properly classifiable as parts of automobiles, and, in doing so, found occasion to explain the rule invoked in the *Willoughby Camera Stores, Inc.*, case. In the *Antonio Pompeo* case, the court expressed its conclusion as follows:

* * * The problem is not whether or not automobiles are customarily manufactured with superchargers, but rather what is the nature and function of the imported superchargers. At the time of importation these superchargers, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use. The *Willoughby* case upon which the Government relies so heavily did not turn upon the fact that the cameras were not designed to operate with tripods. As a matter of fact the court indicates at 21 C. C. P. A. (Customs) 323 that the cameras had "sockets" designed to receive the tripods. The court considered, rather, the function performed by the tripod when applied to its ultimate use, and concluded that in that use it was not a part of a camera. As we understand the *Willoughby* case, it would have made no difference in the result even if the tripods had been imported in physical attachment to the camera. * * *

     \*       \*      \*      \*      \*      \*      \*

In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the definition of "parts" established by the *Willoughby* case, we are of the opinion that they were correctly classified as parts for automobiles.

It should be noted that the superchargers, the subject of the *Antonio Pompeo* case, *supra*, were ordered separately and were not installed as parts of automobiles at the time of their importation. However, after installing a supercharger, the engine will not operate if the supercharger fails. Our appellate court, in the *Antonio Pompeo* case, invoked the rule that, in determining whether an imported article is a "part" of a finished product, it is the function performed by the imported article in its ultimate use that controls. Under this principle, a supercharger, once installed in an automobile, alters or modifies the engine of the motorcar to such extent that the supercharger becomes "an integral, constituent, or component part, without which the article [an automobile] to which it is * * * joined, could not *function as such article* [an automobile]," [italics quoted], the *Willoughby Camera Stores, Inc.*, case, *supra*. This is not true with respect to the mirrors involved in the present case. They have nothing at all to do with the function of an automobile, as such, and whether they are installed, or having been installed or attached and then removed, in no way affects the functioning or the operation of an automobile, as such.

By way of supporting its conclusion, in the *Antonio Pompeo* case, *supra*, the court referred to *United States* v. *Carl Zeiss, Inc.*, 24 C. C. P. A. (Customs) 145, T. D. 48624, wherein certain view finders, designed to be substituted for the original view finders whenever the lenses were changed, were held to be classifiable as parts of cameras, and *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T. D. 42472, which held that 32-shot magazine drums were parts of pistols, even though the pistols were equipped upon importation with a regular 9-shot magazine. Using those two cases to support its reasoning in holding the superchargers to be parts of automobiles, the appellate court, in the *Antonio Pompeo* case, *supra*, stated as follows:

The cases cited by appellee, in our opinion, clearly indicate that where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use. In the *Zeiss* case, *supra*, the court said, "In the case at bar, where a camera for which the finders represented by Exhibits A and B are designed is equipped with a lens and its corresponding finder, *then* the finder is necessary to the completion of the camera and is 'an integral, constituent, or component part, without which the article to which it is * * * joined, could not *function as such article.*' " (First emphasis added.) The court did not consider whether the involved finders were parts of cameras considered *in vacuo*, but whether they were parts of cameras, when they were applied to their intended use on the cameras. Similarly, in the *Stoeger* case, *supra*, the court did not consider whether pistols would operate without the drum magazine, for it was clear that pistols would fire with the regular magazine with which it was normally equipped. Rather, the court considered the function played by the drum magazine as it was placed in use upon the pistol, and determined that at that time it was a part of the pistol.

Consistent with the reasoning followed and the conclusion reached in all of the cited cases, the mirrors in question are not parts of automobiles in a tariff sense. Whether they are bolted to a fender, in the manner that the reversible and side-view mirrors are installed, or attached to the door hinge, as the Volkswagen mirrors are fitted, the mirrors in question are not "integral, constituent, or component" parts, without which the automobile on which any of them may be installed could not function as an automobile. These articles serve as conveniences to the driver of an automobile, supplying him with broader rear-view vision and enabling him to see other cars traveling in the same direction, either alongside or directly behind, thereby mitigating some of the difficulties encountered in driving along city streets or on modern highways. In their use, either on fenders or on door hinges of automobiles, these mirrors are desirable accessories and, as such, they are to be regarded as comparable, for the purpose of tariff classification, with the fog lamps that were the subject of *United American Bosch Corp.* v. *United States*, 1 Cust. Ct. 1, C. D. 1, and the rubber bulb horns that were involved in *S. H. Kress & Co.*

*et al.* v. *United States,* 66 Treas. Dec. 605, T. D. 47369. In both cases, the particular articles under consideration were additions to, or adjuncts of, regular equipment installed by the manufacturer. The fog lamps supplemented the regular lighting system installed by the automobile manufacturer, and the rubber bulb horns were supplementary to the sounding device provided by the manufacturer. In each case, the merchandise was held to be accessories to the equipment, and not parts, of automobiles. So, with the mirrors in question; they are added to the mirror equipment—generally interior mirrors—supplied by the manufacturer. The statement of plaintiffs' witness that "all British Ford products" are supplied with a wing mirror relates to use of the merchandise in a foreign country. Such use has no bearing on the tariff classification of merchandise. *H. Boker & Co. (Inc.)* v. *United States,* 19 C. C. P. A. (Customs) 27, T. D. 44870.

The case of *L. Oppleman, Inc.* v. *United States,* 3 Cust. Ct. 227, C. D. 240, is in point. There, the merchandise consisted of certain marine compasses. In excluding classification thereof as parts of motorboats, the court quoted from the *E. Leitz, Inc.,* and the *Willoughby Camera Stores, Inc.,* cases, *supra,* and then reasoned as follows:

If, as was held in the last-cited case, range finders were not parts of cameras, then *a fortiori* the instant compasses are certainly not parts of motorboats. There, the cameras were specially constructed and designed for the insertion therein of the range finders. Here, there is no proof that any motorboat was specially constructed and designed for the installation of a marine compass. On the contrary, it appears that, where the compass is purchased by a motorboat owner, it must be installed by an expert since there is no particular place on the boat to receive it.

\*       \*       \*       \*       \*       \*       \*

Again, in the cited case the evidence disclosed that it was optional with the purchaser to buy a camera with or without the range finder, and that the range finder was offered for sale separately from the camera. Similarly in the present case it is optional with the purchaser to buy a motorboat with or without a compass, and the plaintiff's catalog shows that the compasses are not only sold separately but that they are sold separately in conjunction with other accessories.

A comparable situation is shown with respect to the merchandise involved herein. These mirrors are sold separately, either alone or in conjunction with other accessories, and it is optional with the owners of automobiles whether exterior mirrors, such as those in question, will be installed.

Further support for excluding the mirrors in question from the provision for parts of automobiles appears in *Seawol Corporation et al.* v. *United States,* 32 Cust. Ct. 392, Abstract 57818, which involved certain electric lights for sewing machines. In holding that the mer-

chandise was not classifiable as parts of sewing machines, the court stated that—

> * * * the testimony of plaintiffs' own witness makes it abundantly clear that any sewing machine, to which the involved lamp could or might be joined, can and does operate just as efficiently without the involved lamp as it could or would with it attached or joined thereto, provided, of course, that there is other ample light. It is not to be presumed, of course, that any one would attempt to operate any sewing machine without sufficient light of some kind to make such operation safe and efficient.

Similarly, in the present case, an automobile will operate just as efficiently whether or not an exterior mirror, like any of those under consideration, is fitted thereto.

Plaintiffs' brief puts much stress on the case of *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, wherein certain horns and lamps were held to be classifiable as parts of automobiles. In reaching that conclusion, the Court of Customs Appeals stated that—

> * * * To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

and also recognized that "the law required the use of horns and lamps on automobiles." The statutes of certain states of the United States, mentioned in plaintiffs' brief, do not require, as counsel argues, the use of side mirrors on automobiles. The gist of the state laws referred to and the cited judicial decisions construing such statutes, as they are set forth in plaintiffs' brief, is that each motor vehicle shall be equipped with a mirror so located and adjusted as to give the operator adequate rear-view vision and that no person shall drive a motor vehicle that is so constructed or loaded or covered as to deprive the driver of adequate rear-view vision. We find nothing to even suggest that a side mirror is "so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable," which the appellate court, in the *Bosch Magneto Co.* case, *supra*, applied to the use of horns and lamps on automobiles.

The case of *Lucas Electrical Services, Inc., et al.* v. *United States*, 36 Cust. Ct. 209, C. D. 1776, cited in plaintiffs' brief, does not apply herein. There, the merchandise consisted of certain ammeters, specifically designed for, and exclusively used in, Jaguar automobiles of British production to indicate the flow of electricity from the generator to the battery. Based upon a finding that "without an ammeter, one is unable to know whether the battery is having current taken from it and without which current the horn and lights would not

function and, in extreme instances, it would be impossible to start the vehicle," the court held that "said ammeters being so intimately integrated with functional parts of the automobile," they are essential parts thereof. The same cannot be said of the mirrors involved herein. The articles under consideration are in the nature of auxiliary equipment, designed and actually used to make the driving of an automobile less difficult under modern complex conditions. They are in no way related to the functional parts of an automobile.

Plaintiffs also cite *Eric Wedemeyer* v. *United States,* 7 Cust. Ct. 141, C. D. 556. In that case, the merchandise consisted of bicycle lamps with accompanying electric generators that were sold as a unit and used as illuminating lights on bicycles operated at night. After finding that the articles were essential for "the safety of the bicyclist and the public in general," the court applied the rule invoked in the *Bosch Magneto Co.* case, *supra,* and held the bicycle lamps to be parts of bicycles. The mirrors under consideration are not comparable; hence, the last-cited case has no application.

Careful consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Our specific references herein have been only to such cases deemed helpful toward our disposition of the issue.

On the basis of the record before us, and for all of the reasons hereinabove set forth, we hold that the mirrors in question, as identified in said schedule "A," are not parts of automobiles for tariff purposes. The protests are overruled and judgment will be rendered accordingly.