BEFORE THE FIRST DIVISION, NOVEMBER 13, 1959

**No. 63510.**—Engis Equipment Company *v.* United States, protest 306885–K/8803 (Chicago).

OLIVER, Chief Judge: This protest is limited to certain merchandise included in two of the entries involved herein. Each entry involves identical items. They are described on the respective invoices as follows:

Invoice with entry 17824

2 Viewing Screens complete
2 Illuminating Systems without filter unit
2 Filter Units
2 Alternative Eyecup Filters

Invoice with entry 13457

1 Viewing Screen complete
1 Illuminating System without filter unit
1 Filter Unit
1 Alternative Eyecup Filter
4 Illuminating Units

The record shows that the merchandise, described as "Illuminating Units" on the invoice with entry 13457, is the same as that described as "Illuminating System without filter unit."

All of the articles in question were classified as optical instruments, not specially provided for, under paragraph 228(b) of the Tariff Act of 1930, and assessed with duty thereunder at the rate of 45 per centum ad valorem. Plaintiff claims that the merchandise is properly classifiable as parts of machine tools, not specially provided for, carrying a dutiable assessment of 15 per centum

ad valorem, under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 51802. The provisions invoked by plaintiff appear in amended paragraph 372 as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 372 <br> * | Machine tools (except jig-boring machine tools) _____ <br> *    *    *    * | 15% ad val. <br> *    * |
| 372 | Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part: <br>    Textile pins_____ <br>    Other_____ | <br><br><br><br> 20% ad val. <br> The same rate of duty as the articles of which they are parts |

Classification of merchandise as machine tools is governed by statutory definition that appears in paragraph 372, as originally enacted, as follows:

PAR. 372. * * *: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

When the case was first called for hearing at Chicago, the port of entry, counsel stipulated that the merchandise in question is composed in chief value of metal and that it is not plated with platinum, gold, or silver, and not colored with gold lacquer. Later, when the case came on for hearing at New York, counsel for defendant moved that the Government be relieved of the concession theretofore made at Chicago, stating that a mistake had been made in agreeing that metal is the component material of chief value in the merchandise under consideration. After admitting that plaintiff did not obtain the concession through fraud or by duress, Government counsel explained that "Investigation at the port of New York revealed that the merchandise is not in chief value of metal, but that the lens is the chief value component material." (R. 39.) Plaintiff's counsel would not consent "to any relief from the stipulation or concession in this case." (R. 28.) The Government's motion was denied. Now, in defendant's brief, counsel renews the discussion of Government's motion to be relieved of its concession. In the abence of any proof—and none was offered at any of the hearings of this case—to support the motion, we adhere to our ruling made in the course of the trial and proceed to review the record with the stipulation between the parties that the articles in question are in chief value of metal.

Plaintiff's witness was the vice president of the plaintiff corporation, whose business includes the importation of machine tools and instruments or equipment therefor. The witness' testimony can be summed up in the following:

The merchandise in question was ordered and imported for the Sheffield Corp. of Dayton, Ohio, for its use in the production of a micro-form grinder (model CT–1157), plaintiff's exhibit 1, which "has the function of grinding shaped flat or cylindrical parts to a predetermined contour." (R. 6.) It was designated by the witness as a "universal grinder," meaning that it has a wide range of adjustments making it capable of working on a large number of forms and shapes, as well as performing special jobs. It is a grinding machine that

operates other than by hand power and employs a tool for work on metal. Describing the operation of this micro-form grinder, the witness testified as follows (R. 10) :

So that this universal grinder can function for the purpose for which it was designed at the top there is a board on which a magnified drawing showing the outline of the part to be produced on the machine is placed. Then through a stylus which the operator places over the outline of the drawing the optical viewing unit, which is the principle of the imported parts, is controlled in its position and moved at the ratio of 50 to 1. Then the operator, looking either into the screen of this unit or into the microscope, can determine as to whether or not the shadow of the work piece towards the grinding wheel, the edges of which are underneath the lower end of this viewing unit, are at the center. If this is not the case he either has to operate slides in the machine to bring them into the center and cause the part to be ground off by the grinding wheel until the outline of the part to be machined would be as nearly identical with the outline of the drawing which was on the pantograph board.

The articles involved herein comprise the "optical viewing unit" of the Sheffield micro-form grinder, hereinabove described. This imported equipment aids the vision of the operator, giving him a magnified view of the work piece and the grinding wheel, enabling him to properly operate the machine.

The items in question are mounted in a black frame and installed on the top of the Sheffield micro-grinder. The item, described as "Viewing Screens complete," consists of a screen and a microscope eyepiece, fitted to the micro-grinder as a unit. By turning a knob on the micro-grinder, the operator may have a projection of the image on the screen, or use the eyepiece, which gives a clear shadow image of the work piece and the grinding wheel, which is below the lower end of this micro-projection unit. The use of the screen or the eyepiece is a matter of preference for the operator. The same degree of magnification is acquired from both. When the use of the microscope eyepiece is sufficient for the operator's purpose, the principle of projection is not involved. The "Illuminating Systems without filter unit" consist of a tube with a means for mounting a 48-watt light bulb in it, a mirror, cover glass, and one lens, so that the light from the bulb will be thrown strongly in the proper direction toward the viewing unit. The "Filter Units" consist of a metal ring, containing a green glass filter, so that the light, when passing through, will be losing most of its intensity and also get a green color. The "Alternative Eyecup Filters" form a second filter, that can be put over the microscope eyepiece, to serve as a convenience for the operator if he changes from the screen to the eyepiece. The sole use of the items in question is as a permanent installation in the Sheffield micro-grinder, model CT–1157, that is designed for use with the optical equipment in question and without which the micro-grinder cannot be operated.

Defendant introduced the testimony of two witnesses. The first witness is the manager of the New York office of the American Optical Co., whose business includes the manufacture of various types of optical instruments, such as microscopes and other scientific instruments of that nature. The witness stated that he has been associated with the company for 33 years and that, throughout the period, he has been employed in the sales department, performing sales and administrative work that involved sales research, sales promotion, and marketing research. He characterized the merchandise in question as "a microscope and a micro-projector combination" that is used with a Sheffield micro-form grinder. His testimony concerning the operation of the items in question with a Sheffield micro-grinder is substantially the same as plaintiff's testimony along the same line. His reference to Sheffield micro-grinders without the use of optical equipment refers to the year 1938, and prior thereto, and evidently relates to obsolete models because, in subsequent testimony, he admitted that the Sheffield micro-grinder (model CT–1157), plaintiff's exhibit 1, is not capable of

use without optical equipment and that he has never seen the micro-grinder operated without the use of optical equipment, such as the merchandise in question.

Defendant's second witness is one of the owners of the Kelly Wire Die Corp., a manufacturer of wire drawing dies and tools of all descriptions. The witness testified that he purchased a Sheffield micro-grinder (model CT–1157), exhibit 1, *supra*, and that he has always operated it with the use of optical equipment, such as the items involved herein.

The case of *M. B. I. Export & Import, Ltd., et al.* v. *United States*, 39 Cust. Ct. 363, Abstract 61048, cited in plaintiff's brief, is pertinent. That case involved certain precision equipment, consisting of a graduated steel scale, an optical device, and other mounting devices, all of which were affixed to a machine identified as "the Dixi 60 horizontal optical jig borer." The court found that the equipment involved therein was designed for use as parts of a jig-boring machine tool, that the articles were imported for that specific purpose and had no other use, and, accordingly, held the merchandise to be classifiable as parts of jig-boring machine tools. A comparable factual situation with the same legal conclusion is applicable herein. In this case, the items in question serve no useful purpose by themselves, but, in order to be utilized, they must be permanently fitted to the Sheffield micro-grinder, which cannot function unless and until the imported optical equipment is attached.

Counsel for defendant argues that the articles in question are merely accessories to, and not parts of, the Sheffield micro-grinder. To support the contention, several cases are cited and discussed in counsel's brief. *British Auto Parts, Inc., et al.* v. *United States*, 40 Cust. Ct. 238, C.D. 1989; *Victor X-Ray Corp.* v. *United States*, 63 Treas. Dec. 72, T.D. 46108 (reversed in *Same* v. *Same*, 22 C.C.P.A. (Customs) 665 (customs suit 3637), T.D. 47872; *W. C. Sullivan & Company* v. *United States*, 26 Cust. Ct. 247, C.D. 1331; *Seawol Corporation et al.* v. *United States*, 32 Cust. Ct. 392, Abstract 57818; and *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680. All of the cited cases are distinguishable from the present case. In each of them, the court found that the merchandise under consideration was not necessary to the completion of the article with which it was used and, therefore, held that the articles were not classifiable as "parts." A brief outline of each of the cited cases follows:

In the *British Auto Parts, Inc., et al.* case, the merchandise consisted of certain rear-view, exterior, automobile mirrors, which were supplementary items to the regular and required mirror equipment supplied by manufacturers. The mirrors had nothing to do with the function of the automobile, as such. The claim for classification as parts of automobiles was overruled.

The *Victor X-Ray Corp.* case involved certain sheets of lead glass that were installed in the partitions of control booths of X-ray rooms and also used in fluoroscopic screens. In neither of such uses did the merchandise affect the operation or mechanism of the machine or the results obtained. The collector's classification of the sheets of glass as parts of machines was overruled.

The *W. C. Sullivan & Company* case involved merchandise described as "storm hats for use on exhaust pipes of farm tractors." Their use on tractors was merely "casual, auxiliary, or optional," and they were not essential to the operation of the farm tractors. Therefore, claim for classification of the articles as parts of agricultural implements was overruled.

In the *Seawol Corporation et al.* case, the merchandise consisted of certain electric lights for sewing machines. The court's conclusion, excluding the merchandise from the provision for parts of sewing machines, was based on a finding that any sewing machine would operate with the same degree of efficiency whether or not the lamps in question were attached or joined thereto.

In the *Kalter Mercantile Co. et al.* case, the primary issue was the question of entireties, which is not presented herein.

In the present case, the articles under consideration are necessary to the completion of the Sheffield micro-grinder, which cannot properly function without the present merchandise permanently installed therein. In *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851, the rule, governing the tariff classification of imported merchandise as a part of an article, was stated as follows:

> It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* * * * [Italics quoted.]

At the time of importation of the items in question, they were dedicated solely for use on the Sheffield micro-grinder, and, when they were fitted thereto, they became integral, constituent, and component parts thereof. The condition is comparable with that discussed by our appellate court in *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602, which involved certain superchargers, manufactured and specially designed for installation in Ford and Austin automobiles. In holding the merchandise to be classifiable as parts of automobiles, the court expressed its conclusion as follows:

> * * * The problem is not whether or not automobiles are customarily manufactured with superchargers, but rather what is the nature and function of the imported superchargers. At the time of importation these superchargers, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use. * * *

> * * * * * * *

> In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the definition of "parts" established by the *Willoughby* case, we are of the opinion that they were correctly classified as parts for automobiles.

Under the principles enunciated in the *Willoughby Camera Stores, Inc.*, and *Antonio Pompeo* cases, *supra*, the articles in question, hereinabove identified, are parts of the Sheffield micro-grinder (model CT–1157). Since the micro-grinder is a machine tool, within the statutory definition thereof in paragraph 372, *supra*, the merchandise involved herein is properly classifiable under the provision for parts of machine tools in paragraph 372, as modified, and dutiable thereunder at the rate of 15 per centum ad valorem, as claimed by plaintiff, and we so hold.

To the extent indicated, the protest is sustained and judgment will be rendered accordingly.