(C. D. 1669)

ANTONIO POMPEO *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 29, 1954)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Arthur R. Martoccia* and *Richard H. Welsh*, trial attorneys), for the defendant.

LAWRENCE, Judge: The dutiable classification of certain imported superchargers for Ford and Austin automobile engines is contested by the plaintiff herein.

The devices were classified by the collector of customs as machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as amended by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), and duty was assessed thereon at the rate of 15 per centum ad valorem.

Three alternative specific claims are relied upon by plaintiff herein as follows:

That the merchandise should have been classified as (1) parts of internal-combustion engines of the carburetor type within the purview of paragraph 353 (covering electrical articles) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 353), as modified, *supra*, or (2) parts of internal-combustion engines of the carburetor type in paragraph 372 (the machine provision) of said act, as modified, the rate of duty in each instance being 10 per centum ad valorem, or (3) parts of automobiles in paragraph 369 (c) of said act (19 U. S. C. § 1001, par. 369 (c)), as modified, *supra*, for which duty at the rate of 12½ per centum ad valorem is provided.

For ready reference, the pertinent text of the paragraphs above referred to is here set forth—

Paragraph 372 of the Tariff Act of 1930, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other (except wrapping and packaging machines; food grinding or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; machines for manufacturing chocolate or confectionery; and internal-combustion engines) _____ 15% ad val.

Paragraph 353 of said act, as modified, *supra*:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Internal-combustion engines:
    Carbureter type_____ 10% ad val.

\*          \*          \*          \*          \*          \*          \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part. — The same rate of duty as the articles of which they are parts.

## Paragraph 372 of said act, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

    Internal-combustion engines:
        Carburetor type_____ 10% ad val.

\*     \*     \*     \*     \*     \*     \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\*     \*     \*     \*     \*     \*     \*

    Other_____ The same rate of duty as the articles of which they are parts.

## Paragraph 369 of the Tariff Act of 1930:

\*     \*     \*     \*     \*     \*     \*

(b)   All other automobiles, \* \* \* 10 per centum ad valorem.

\*     \*     \*     \*     \*     \*     \*

## Paragraph 369 (c) of said act, as modified, *supra*:

Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b) of paragraph 369, Tariff Act of 1930, finished or unfinished, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

    Other_____ 12½% ad val.

Antonio Pompeo and James E. Pauley, the two witnesses who testified in the case, were called by the plaintiff, and in the brief of defendant it is stated that there is no dispute about their testimony. Both witnesses were well qualified by their experience in the automotive industry.

The substance of the testimonial record may be summed up as follows: The superchargers in controversy were manufactured and specially designed for installation in Ford and Austin automobiles, respectively. They are placed between the carburetor and the fuel heads so that the fuel mixture, consisting of gasoline and air, passes from the carburetor through the supercharger to the cylinder engine. The installation of a supercharger in an engine is a 4-hour operation. In the language of witness Pauley, the work entails the following:

A.   Well, it is a lengthy process, to start with you remove the original installation, the intake manifold, generator, carburetor, pump, fan assembly, radiator, lower crank pulley and then you put on the imported articles.

Q. What are the imported articles?—A. Starting from the bottom, you have a different crank pulley, four sheave pulley; two original belts are used to drive the water pump, generator and fan and two additional sheaves are used to drive the supercharger through an idling pulley, which is another imported part, this is a spring loaded pulley and then the manifold is put on——

Q. Is that put on? Rather, is that imported?—A. Yes, and the generator bracket is imported; two special studs to fit the generator bracket to the cylinder head is imported; a fuel pump stand, the supercharger and the carburetor, and of course, the throttle linkage has to be made up.

Q. How about the gasoline lines?—A. Yes, and the fuel lines have to be modified; the original lines are not large enough for high speed operation.

When in actual use, the supercharger increases the horsepower output of the Ford engine 60 per centum. While the subject superchargers were designed for use with Ford engines and Austin engines, they are not interchangeable from one car to the other. Superchargers are also made for other cars such as the Oldsmobile, Volkswagon, Simca, Fiat, and Chevrolet. Some cars, such as the Mercedes-Benz, have certain models which are equipped with a supercharger at the time of their manufacture.

The parties litigant are in agreement that Ford and Austin automobiles are ordinarily and normally operated without superchargers and that the incorporation of them for use in those cars is optional, depending upon the desire of the operator or car owner. Furthermore, it is not disputed that once a supercharger is installed in a motorcar it becomes a necessary and integral part of the engine and should the supercharger become disabled for any reason the car could not be operated without it.

Defendant urges that, since a Ford or Austin automobile would normally be motivated by an engine of the ordinary type, the supercharger must be regarded as a nonessential accessory, which is not an integral and constitutent part within the doctrine announced in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. In the course of its opinion in that case, the court stated—

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Citing cases.] [Italics quoted.]

Defendant also invites our attention to a decision of this court in *United American Bosch Corp.* v. *United States*, 1 Cust. Ct. 1, C. D. 1, wherein certain fog lamps were denied classification as parts of automobiles. The court referred to the *Willoughby* and other cases and set forth the following quotation from *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, which was relied upon in the case of *S. H. Kress & Co. et al.* v. *United States*, 66 Treas. Dec. 605, T. D. 47369—

May it seriously be urged than an automobile already equipped with a horn or other sounding device nevertheless requires one of these bulb horns to complete its equipment in that respect? Such a horn may well be a convenient or desirable accessory, but that would not make the horn a "part" of an automobile in the tariff sense. * * *

In the *Willoughby* case, *supra*, the court declined to hold that certain wooden tripods were parts of cameras, pointing out that when a tripod and a camera are used together each "performs its separate function without loss of any of its essential characteristics."

In the *United American Bosch Corp.* case, *supra*, fog lamps were held to be accessories, it appearing that they were used *in addition to* the lighting system installed by the automobile manufacturer. The court followed its earlier decision in *S. H. Kress & Co. et al.* v. *United States, supra*, wherein certain rubber bulb horns installed by various owners in their cars *to supplement* the manufacturer's sounding device already in the cars were held not to be parts of automobiles.

A significant point of distinction between the cases above discussed and the instant case resides in the fact that the fog lamps and rubber bulb horns were used as accessories to lamps and horns already installed in the cars and were not necessary to the operation of the vehicles, whereas, in the case at bar, a supercharger when installed is necessary and essential to the operation of the car. In the *Willoughby* case, as above pointed out, the tripod and camera each performed its separate function, without loss of any of its essential characteristics, which cannot be said of an automobile equipped with a supercharger.

*Per contra*, see *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249, and *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872.

Obviously, if a supercharger were imported installed in the engine of a motorcar, it would clearly be a part of the automobile even though it could be replaced by an ordinary engine by relatively the same complicated mechanical process described by the witnesses in augmenting any ordinary engine with a supercharger.

It would create a strange anomaly for us to say that if superchargers are installed in automobile engines before they are imported they are parts of said mechanisms, and that superchargers, which have been manufactured and specially designed for installation in Ford and Austin automobiles, respectively (which installation is an extensive operation), imported separately are not parts of automobiles.

·Whereas it is conceded by the parties that the use of a supercharger is optional, it is, nevertheless, the fact that once installed it becomes an integral, constituent, and component part, without which the motor vehicle will not function. It would appear, therefore, that the imported superchargers are parts of automobiles within the purview of paragraph 369 (c), as modified, *supra*.

At the present time, motorcars are in such general use throughout the country that it is a matter of common knowledge, of which the court may take judicial notice, that some cars are equipped with automatic transmission, while others are not. Other features are power steering, power brakes, and numerous innovations which have come into use during recent years, some of which are optional, and all of which are the result of a gradual development in automotive mechanisms. Each improvement has created what is undoubtedly a new "part" of an automobile, even though not all cars are equipped with the various innovations above referred to.

Depending upon one's business or personal activities, some drivers may prefer the ordinary engine for motive power, while others may desire greater speed and, hence, utilize a supercharger, but in either event the motive power is a part of the machine.

In the brief of the plaintiff, with reference to its three alternative claims, there is mention of the principle of relative specificity. In view of the conclusion we have reached, and even though the instant superchargers may be encompassed by the provisions of paragraphs 353 and 372, as modified, *supra*, as parts of internal-combustion engines, carburetor type, they are more specifically provided for as parts of automobiles in said paragraph 369 (c), as modified.

Upon the record before us, we find and hold that the superchargers in issue come within the scope of the provision for parts of automobiles in paragraph 369 (c), as modified, *supra*, and are properly dutiable at 12½ per centum ad valorem. That claim of plaintiff is, therefore, sustained. All others are overruled.

Judgment will be entered accordingly.

DISSENTING OPINION

RAO, Judge: I am inclined to the view that the subject superchargers were properly classified by the collector as machines, not specially provided for, within the purview of paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and are, therefore, dutiable, as assessed, at the rate of 15 per centum ad valorem.

My conclusion derives from the established fact, as stated in the opinion of the majority, that "Ford and Austin automobiles are ordinarily and normally operated without superchargers and that the incorporation of them for use in those cars is optional, depending upon the desire of the operator or car owner."

The rule for determining whether an imported article is a part of another or different article is set forth with clarity in the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which *it is to be joined, could not function as such article*. [Citing cases.] [Italics supplied and quoted.]

It seems to me that a literal application of the cited principle to the established fact precludes the finding that the superchargers at bar are parts of automobiles. Ford and Austin automobiles, as well as millions of other cars produced and now in operation on the roads and highways of this country, function normally and to the fullest extent intended by their respective manufacturers, without the installation of superchargers. The average automobile, which has not been specially adapted to receive a supercharger, does not require the attachment of further parts for its usual, normal, or actual performance. It can not be said of automobiles that they are unable to function fully as such without the addition of superchargers. Until such time as automobiles are, in the first instance, designed to operate as motor vehicles equipped with superchargers, the latter would not, in my opinion, be parts of automobiles.

I have not overlooked the further undisputed fact to which the majority also alludes "that once a supercharger is installed in a motor-car it becomes a necessary and integral part of the engine and should the supercharger become disabled for any reason the car could not be operated without it." I can not, however, accord any probative significance to this second fact, for the reason that the record before me contains no evidence which would make it relevant. There is no suggestion here that, prior to importation, any particular Ford or Austin automobile had been adjusted, in the manner described by the witness, Pauley, so as to require the installation of a supercharger to enable it to be driven. On the contrary, it may reasonably be inferred from the instant record that, in the usual course of events, the purchase of a supercharger precedes the adaptation of the automobile.

How, then, can it be said that at the time of importation there existed an automobile, incomplete or unfinished, which could not become a perfectly functioning mechanism, without the addition of a supercharger? If the proof were otherwise, and there had been established that a given automobile had its mechanism altered for the installation of a supercharger, and as a result could not be operated without the same, a different conclusion might be reached. That, however, is not the case here.

In the light of what we may judicially notice, and of what is clearly implied in the record in the instant case, that the majority of automobiles are designed to run, and in fact do run, at legally allowable rates of speed, minus these superchargers, there is, in my opinion, no justification for holding that superchargers are parts of automobiles.

Neither do I regard it as anomalous or inconsistent that a supercharger installed in the engine of an imported automobile would

properly be regarded, for tariff purposes, as a part of such automobile. The rule is well established that the classification of imported merchandise is to be determined by the state and condition thereof at the time of importation. In such a case, it may be said, with propriety, that the automobile so imported could not function without the supercharger, which, by virtue of the adjustments made to the automobile, has become an integral, constituent, component part of the vehicle in question. This line of reasoning does not apply to automobiles which have not been designed or altered in construction to operate with superchargers.

Although plaintiff asserts in his brief "that a supercharger * * * is a part of an internal-combustion engine, carburetor type, * * *" the record is barren of proof to substantiate this contention. Evidence that a supercharger is used with an internal-combustion engine, carburetor type, does not *ipso facto* establish that the one is a part of the other. There being a failure of proof in this respect, the claim for classification within the provisions of paragraph 353 or of paragraph 372 of the Tariff Act of 1930, both as modified by the General Agreement on Tariffs and Trade, *supra*, ought also to be overruled.

By reason of the foregoing, all claims in the protest should be overruled.