(C. D. 1776)

LUCAS ELECTRICAL SERVICES, INC. 
FRANK J. EBERLE CO.   } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 26, 1956)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *E. Thomas Honey* of counsel) for the plaintiffs.

*George S. Leonard,* Acting Assistant Attorney General (*Richard M. Kozinn,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of ammeters was classified by the collector of customs in paragraph 368 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a)), as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T. D. 48093, as instruments or devices intended or suitable for measuring the flowage of electricity, valued at not over $1.10 each. Duty was imposed thereon accordingly at the rate of 27½ cents each, plus 32½ per centum ad valorem.

Plaintiffs contend that the merchandise should be classified as parts of automobiles in paragraph 369 (c) of said act (19 U. S. C. § 1001, par. 369 (c)), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and subjected to duty at the rate of 12½ per centum ad valorem.

The material text of the competing statutes is here set forth:

Paragraph 368 (a), as modified, *supra*:

\* \* \* mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity; \* \* \*:

  (1) If valued at not more than $1.10 each_____ 27½¢ each.

 \*   \*   \*   \*   \*   \*   \*

  (2) Any of the foregoing shall be subject to an additional

    duty of_____32½% ad val.

 \*   \*   \*   \*   \*   \*   \*

Paragraph 369 (b) of the Tariff Act of 1930:

All other automobiles, \* \* \* 10 per centum ad valorem.

Paragraph 369 (c), as modified, *supra*:

Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b) of paragraph 369, Tariff Act of 1930, finished or unfinished, not specially provided for:

  For motor cycles_____ 15% ad val.

  Other_____ 12½% ad val.

William Gethin Owen, the sole witness in the case, testified on behalf of plaintiffs that he had been vice president of the Lucas Electrical Services, Inc., since the inception of the company 7½ years ago and was formerly with the parent company, Joseph Lucas, Ltd., in Eng-

land. He produced a sample of the merchandise described on the invoice as "Item Z, Part No. 36128, Ammeters," which was received in evidence as exhibit 1, and a sample representing "Item Y, Part No. 36071, Ammeter" was produced by the witness and received in evidence as exhibit 2.

Owen testified that said exhibits "are wholly used as replacements on specific automobiles which have been imported in this country"; that "Exhibit 1 is designed and only fitted to the Jaguar 2-seater sports car" for the last 3 or 4 years; and that the imported ammeters are sold as replacements, none for original installation.

However, as stated by the witness, all Jaguars have an ammeter fitted when the car is originally produced. It may be noted that the Jaguar automobile is a British production.

The witness further stated that the merchandise represented by exhibit 1 "cannot be used for anything else but an automobile ammeter."

With reference to exhibit 2, the witness stated that it was designed for the Jaguar 4-seater sedan and has been fitted for the last 3 years on that particular car. Like exhibit 1, exhibit 2 is used for replacement purposes in this country and has no other use than as an automobile ammeter.

In describing the manner in which the ammeters are utilized, the witness gave the following explanation:

There is an instrument panel in front of the driver. There is an aperture to fit the size of the ammeter. The ammeter is inserted from the back, and in this particular case, is located onto the wooden face here by means of two screws on those two lugs, * * *

which appear on the back of exhibits 1 and 2.

The ammeters are affixed to the dashboard and are connected to the electrical supply of the automobile. The witness stated:

There are two electrical terminals, and they are connected to the electrical supply in the automobile, one sharing the current which is going from the generator into the battery, and the other terminal connected from the battery, to show the current leaving the battery and not being replaced.

Inside the ammeter is a very simple coil of wire, and when current is passed through a coil of wire it induces magnetism. The needle or pointer is connected to a very small magnet. If current flows in one direction in a coil of wire it induces magnetism one side, and will attract the one side of a magnet—the north end or south end. If it flows the other way it will attract the other side of the magnet. As it attracts the needle is attached to the magnet, it will move either to the left or right, depending on the flow of current.

It seems not to be disputed that the imported ammeters are used to indicate the flow of electricity from the generator into the battery. By means of the ammeter, the operator of a car may know whether the generator is operating properly.

The witness Owen stated that "if the battery is having current taken from it and you have no ammeter then you have no means of telling that, which of course, can lead to a dangerous situation, in so much as you can't possibly have no horn, no lights, and in extreme cases, you cannot operate your motor car."

Owen expressed the opinion that an ammeter "is most certainly an added safety factor to an automobile" and that while an ammeter shows that electrical current is flowing, it does not measure the amount of current.

While it is true that Owen testified that the use of exhibits 1 and 2 "is a convenience. It does tell the owner something that is going on with his automobile that a lot of owners like to know," that statement, of course, must be taken in conjunction with his earlier testimony that, without an ammeter, one is unable to know whether the battery is having current taken from it and without which current the horn and lights would not function and, in extreme instances, it would be impossible to start the vehicle.

When the witness Owen was asked if ammeters, such as exhibits 1 and 2, were removed from the Jaguar automobile, would the automobile operate without modification, he answered, "No," that "You would either have to replace the ammeter with another one designed specifically for that car, or the wiring of the fascia panel would have to be altered."

In support of its contention that the imported ammeters should be classified as parts of automobiles, reliance is placed upon the following decisions of this and our appellate court: *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, where lamps and horns were held to be dutiable as parts of automobiles; *Industrial Operations, Inc.* v. *United States*, 30 Cust. Ct. 82, C. D. 1500, which held that speedometers should properly be classified as parts of motorcycles; *Antonio Pompeo* v. *United States*, 34 Cust. Ct. 12, C. D. 1669, affirmed in *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602, in which superchargers were held to be parts of automobiles; *Young Windows, Inc.* v. *United States*, 34 Cust. Ct. 138, C. D. 1693, which held that certain window regulators, being essential parts of a driver's window to permit efficient operation of an automobile truck, should be classified as parts of automobile truck bodies; and *C. J. Holt & Co., Inc.* v. *United States*, 27 Cust. Ct. 88, C. D. 1352, holding that spare tires and tubes were parts of automobiles for drawback purposes.

In the *Bosch* case, *supra*, the court stated that—

* * * it is a matter of common knowledge that the use of lamps and horns is not optional if the operator of the machine operates it in a safe, efficient, and proper manner. The machine could be operated without mud guards, without tires, and without a wind shield, and yet it is obvious that they are necessary and

generally required if the machine is to be operated in its usual manner. To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

The foregoing considerations lead us to the conclusion that, although the ammeters in controversy do not participate in the actual operation of the automobiles to which they are affixed and an automobile could, as stated by the court in the *Bosch* case, *supra*, actually operate without various features which are "necessary and generally required if the machine is to be operated in its usual manner," said ammeters being so intimately integrated with functional parts of the automobile, we are of the opinion that they do contribute in a very material way to the safe, efficient, and proper operation of the machine and are, therefore, essential parts thereof. We so hold.

Having concluded that the subject ammeters are parts of the automobiles in which they are to be installed, our next question is whether said ammeters are mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity within the meaning of paragraph 368 (a), *supra*.

Upon this phase of the case, our attention is invited to the decision in *Ferranti, Ltd.* v. *United States*, 69 Treas. Dec. 609, T. D. 48242, wherein we definitely held, in an elaborate opinion which reviewed the legislative history of paragraph 368 of the Tariff Act of 1930 and certain judicial authorities, that certain ammeters and volt meters were properly classified in paragraph 368 (a) (1) (2) of said act as mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity.

However, we have the undisputed testimony of the only witness in the instant case, who was well informed with respect to the structure of the Jaguar automobiles, that the ammeters in controversy do not measure the flow of electricity, but merely indicate whether it is flowing—that is, whether the battery is charging or discharging electricity.

In view of this unrebutted testimony, we find and hold that the subject ammeters are not "mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity," as provided in said paragraph 368 (a), as modified.

We have examined the various cases cited by counsel in their briefs, but find nothing therein to compel a conclusion different from that above stated.

For the foregoing reasons, we hold, upon the record before us, that the ammeters involved herein should be classified as parts of automobiles in paragraph 369 (c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, and subjected

to duty at the rate of 12½ per centum ad valorem, as claimed by plaintiffs. That claim in the protest is sustained and judgment will be entered accordingly.