No. 64136.—Lodge Spark Plug Co., Inc., and James Loudon et al. *v.* United States, protests 59/3599, etc. (Los Angeles).

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, are consolidated for the purpose of trial and cover a variety of spark plugs classified by the collector of customs at Los Angeles under the parts provision contained in paragraph 369(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, or the Sixth Protocol of Supplementary Concessions to the General Agreements on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and assessed with duty at the rate of 12½ per centum ad valorem, 11½ per centum ad valorem, or 11 per centum ad valorem, depending upon the date of importation.

Plaintiffs, in their protests or by timely amendment filed thereto, claim said spark plugs to be properly classifiable under the parts provision of either paragraph 353 or 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, both of which paragraphs provide for "Internal-combustion engines, carburetor type," with the rate of 8¾ per centum ad valorem prescribed in both paragraphs.

The pertinent portions of the paragraphs involved herein are as follows:

Paragraph 369(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b) of paragraph 369, Tariff Act of 1930, finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other_____ 12½% ad val.

Paragraph 369(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108:

Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) or 369(b) in this Part.

|  | A | B |
|---|---|---|
|  | 11½% ad val. | 11% ad val. |

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Internal-combustion engines,
carburetor type_____ 8¾% ad val.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Parts, finished or unfinshed, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof).

The same rate of duty as the articles of which they are parts.

Paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Machines, finished or unfinished, not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Internal-combustion engines of the carburetor type_____ 8¾% ad val.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other_____ The rate for the article of which they are parts.

The record in this case consists of the testimony of one witness called on behalf of the plaintiffs and the introduction of seven exhibits. Mr. Warren, president of the Lodge Spark Plug Co., Inc., testified that his company is a distributor of spark plugs throughout the United States; that his duties require him to be an expert in this field; that the imported spark plugs are grouped in various categories; that one grouping denominates the spark plugs as regular spark plugs, racing-type spark plugs, platinum spark plugs, and silver spark plugs; that the spark plugs are further broken down into the physical dimensions of the plugs and cover those denominated as 10 millimeters, 12 millimeters, 14 millimeters, and 18 millimeters, and have a reach of one-quarter inch, one-half inch, three-eighths inch, seven-sixteenths inch, five-eighths inch, and three-quarters inch; that the reach is the distance from the shell of the spark plug to the end; that the electrodes in the regular spark plugs are made of a nickle alloy, while the racing spark plugs have electrodes made of either platinum and nickel or copper and nickel to permit a greater transfer of heat; that the platinum spark plugs are made of a platinum alloy which permits a considerably longer life of the spark plugs, while the silver spark plugs have electrodes made of nickel and silver alloy and have a life expectancy halfway between the regular spark plugs and the platinum spark plugs. Mr. Warren introduced a sample of a racing type spark plug, which was received as plaintiff's exhibit 1 and identified by the manufacturer's code as 10R49, which is a 10-millimeter spark plug, having a half-inch reach; plaintiffs' exhibit 2, identified by the manufacturer's code as CN, represented a standard 14-millimeter spark plug, having a half-inch reach; plaintiffs' exhibit 3 is a standard 18-millimeter spark plug with a half-

inch reach and is identified by the manufacturer's code as SC; plaintiffs' exhibit 4 is a platinum spark plug, having a diameter of 14 millimeters and a half-inch reach and is designated by the manufacturer's code as CNP.

The witness testified that his firm sells the imported spark plugs at three levels of distribution, warehouse, jobber, and dealer; that the first level is made up of engine manufacturers or other representatives, and the plugs are fitted as original equipment in marine, motorcycle, industrial, automotive, and aircraft engines; that the purpose of the spark plug is to ignite the gasoline, and an internal-combustion engine of the carburetor type could not operate without a spark plug.

Mr. Warren then testified that he had prepared charts, based upon his own personal information and the information of his competitors, to determine the proper type of plug to be utilized in each engine. These charts were received in evidence as plaintiffs' illustrative exhibit 6 and collective illustrative exhibit 7. The witness then testified that the 10-millimeter spark plugs are fitted to stationary and nonstationary internal-combustion engines of the carburetor type; that the nonstationary engines are marine, motorcycle, truck, and automobile engines; he estimated that less than 50 percent of such plugs is used in automobiles with 1 to 2 percent used in tractors and 10 to 20 percent used in marine engines, with their use in stationary engines being negligible; that the 14-millimeter spark plugs are used in internal-combustion engines of the carburetor type, with about 60 percent being used in automobiles, 5 percent in tractors, 20 or 30 percent in motorcycles, and 10 to 15 percent in marine engines; that the 18-millimeter spark plugs are used in the same manner with the percentages in marine, automotive, and industrial being evenly distributed at approximately 30 percent; that a shielded spark plug, such as plaintiffs' exhibit 5, is used as a fire preventive device. The witness admitted that there is nothing in the complete line of spark plugs involved herein which would physically prevent their being used in any type of internal-combustion engine of the carburetor type.

It is stipulated by and between counsel for the parties that the involved spark plugs are in chief value of metal.

Based upon this record, counsel for defendant, in his brief, contends that the involved spark plugs are more specifically provided for as parts of automobiles under paragraph 369 of the Tariff Act of 1930, as modified, *supra*, since the chief use of the 10-millimeter and 14-millimeter spark plugs are in internal-combustion engines of the carburetor type, which are chiefly used in automobiles, and that the 18-millimeter spark plugs are utilized equally in automotive, marine, and industrial engines. Defendant relies primarily on the decision of this court in the case of *Antonio Pompeo* v. *United States*, 34 Cust. Ct. 12, C.D. 1669, which involved certain superchargers specifically designed for installation in Ford and Austin automobiles, which were classified under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and claimed by the importer to be properly classifiable as parts of automobiles under paragraph 369(c) of said act, as modified by said General Agreement on Tariffs and Trade, *supra*. The claim of the importer therein was sustained by the majority of this court, and the decision was affirmed by the Court of Customs and Patent Appeals in *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602.

Counsel for defendant relies particularly upon the following quotation of this court's decision in the *Pompeo* case, *supra*:

In the brief of the plaintiff, with reference to its three alternative claims, there is mention of the principle of relative specificity. In view of the conclusion we have reached, and even though the instant superchargers may be encompassed by the provisions of paragraphs 353 and 372, as modified, *supra*, as parts of internal-combustion engines, carburetor type, they are more specifically provided for as parts of automobiles in said paragraph 369(c), as modified.

The facts in the *Pompeo* case, *supra*, are clearly distinguishable from the record as made herein. In the *Pompeo* case, it was clearly established that the involved superchargers were specifically designed and dedicated to Ford and Austin automobiles. In the case at bar, while it is true that the involved spark plugs may be and are in fact used in automobiles among other applications, there is no dedication to such use in automobiles. Accordingly, the *Pompeo* case, *supra*, is not controlling herein.

It is the position of plaintiffs that, although the involved spark plugs are used in automobile engines, among other applications, such as marine, motorcycle, and industrial engines, they are not within the purview of the parts provision of paragraph 369(c) of the Tariff Act of 1930, as modified, *supra*, since there is no dedication to such use. In support of this position, counsel cites the case of *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894, and *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873. These cases basically stand for the proposition that for one article to constitute a part of another article for tariff purposes, said article must be advanced to the point which definitely commits it to that specific class and kind of manufacture, or there must be an element of physical dedication or commitment to use as part of said other article or thing. Accordingly, chief use, even if established, is not sufficient for tariff purposes to constitute an article as part of another article.

Based upon the foregoing, we are of the opinion that the involved spark plugs are not dedicated to use in automobile engines and are, accordingly, more specifically provided for as parts of internal-combustion engines, carburetor type, under paragraph 353 or 372 of the Tariff Act of 1930, as modified, *supra*, each of which paragraphs provides a rate of duty of 8¾ per centum ad valorem. In view of the fact that both provisions provide for internal-combustion engines at the same rate of duty, it is unnecessary to decide which of these two paragraphs controls the classification. *United States* v. *American Machine & Metals, Inc.*, 29 C.C.P.A. (Customs) 137, C.A.D. 183.

To the extent indicated, the specified claim in these suits is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.