BEFORE THE SECOND DIVISION, JUNE 6, 1961

No. 65768.—G. L. Electronics, Inc., and Arrow Sales, Inc. v. United States, protests 257762–K and 282071–K (Los Angeles).

LAWRENCE, Judge: Protest 257762–K in the name of G. L. Electronics, Inc., and protest 282071–K in the name of Arrow Sales, Inc., were consolidated for trial.

Certain articles described on the invoice in protest 257762–K as Toho testers, and on the invoice covered by protest 282071–K as O–1 MA, meters, "MO–38" type (hereinafter referred to as meters), were classified by the collector of customs as instruments suitable for measuring electrical energy in paragraph 368 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 368), as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T.D. 48093, and duty was imposed thereon at the appropriate rates.

Plaintiffs, by their protests, claim said merchandise is properly dutiable at 13¾ per centum ad valorem as articles having as an essential feature an electrical element or device, which are provided for in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739; or dutiable at the rate of 12½ per centum ad valorem in said paragraph 353, as modified, *supra*, as radio or television apparatus.

The pertinent text of the statutes involved reads as follows:

Paragraph 368 of the Tariff Act of 1930, as modified, *supra*:

* * * mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity; time switches; all the foregoing which are provided for in paragraph 368 whether or not in cases, containers, or housings:

    (1)   If valued at not more than $1.10 each_____ 27½¢ each.

        *       *       *       *       *       *       *

    Valued at more than $2.25 but not more than $5 each_____ 75¢ each.

        *       *       *       *       *       *       *

    (2)   Any of the foregoing shall be subject to an additional duty of_____ 32½% ad val.

Paragraph 353 of said act, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    *       *       *       *       *       *       *

    Television apparatus_____ 12½% ad val.

    Other (except the following: blowers; combination candy cutting and wrapping machines; cooking stoves and ranges; cordage machines; fans; flashlights; industrial cigarette making machines; internal-combustion engines of the non-carburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; tobacco cutting machines; and washing machines)_____ 13¾% ad val.

Electrical signaling, radio * * * apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices)_____ 12½% ad val.

At the trial, plaintiffs introduced collective exhibit 1, to represent the Toho testers, and illustrative exhibit 2 was received to represent the meters.

The only witness in the case, George Lichterman, was called by the plaintiffs. He testified in substance as follows: He is president of the G. L. Electronics, Inc., and secretary of Arrow Sales, Inc., the plaintiffs herein; his duties consist of purchasing, merchandising, advertising, and selling electrical equipment. He had taught audiofrequency for a brief period at the Illinois Institute of Technology; had written technical manuals for the technical services of the Air Force, United States Navy, and Signal Corps; was a member of the Institute of Radio Engineers for the past 11 years; and was a member of the Audio Engineering Society.

As a result of his studies and experiments, coupled with his commercial activities, Lichterman had acquired considerable knowledge of the behavior, control, and utility of electricity. Through experience and training in the electrical field, including electronics, the witness had become familiar with the uses of the Toho tester, and, in his opinion, it could not be used to measure electric power or energy but rather to indicate voltage, which he explained as follows, using exhibit 1 by way of illustration. In order to use a Toho tester to indicate voltage, the red and black leads must be put into the proper terminals of exhibit 1 while the two long probes are placed parallel to an enclosed circuit for this determination. The witness indicated that enclosed in exhibit 1 is a D'Arsonval instrument, which is a coil in a permanent fixed field of magnetism; that a minute current flows through the wires of the probes and through multiplier resistors inside the instrument; that as the current passes through it generates a magnetic field, which opposes the fixed magnetic field and forces the needle to move, thus indicating the amount of pressure between the two points under test.

He stated that amperage could be determined in a somewhat similar procedure, except that the probes are placed in series and, instead of the multiplier resistors contained in the instrument, a shunt resistor is used; that the resistance can be determined by the Toho tester by directly solving the mathematical equation known as Ohm's law, which is that resistance is equal to voltage divided by current; that the instrument contains a known voltage of 1½ volts and a known current (by virtue of the battery contained therein) ; that the resistance in the instrument is known depending upon the hole in which you place the probes on exhibit 1; and that, with these factors, the instrument directly solves the equation and indicates the amount of resistance between two points in any given circuit.

The witness testified that the purpose of importing these instruments is to sell them to radio and television repairmen who use them to ascertain what may be wrong with a set.

When asked to give his understanding of the term "flowage of electricity," the witness stated:

> To me, it indicates the transference from the power generating points to the device absorbing the power, as for example, from a wire to the electric plant on the Colorado River, to the electric iron which the housewife is using. Transferring power from one point to another is flowage of electricity.

In his opinion, the Toho tester does not measure the flowage of electricity; a watthour meter is used for that purpose. The evidence further shows that the Toho tester is a device having as an essential feature an electrical element.

With respect to the meter represented by illustrative exhibit 2, Lichterman stated that it is a testing mechanism used to determine the frequency of radio signals in a device known as a grid dip meter; that it is principally used as an indicating device in many different types of electrical equipment to determine frequency of radiation energy or to determine correct operating conditions under which a tube is to operate; that the meter is contained in radio transmitters, radar in ships at sea, and direction-finding devices used in electronics; that the meter does not measure voltage, resistance, or wattage and has as an essential feature an electrical element.

It was stipulated by the parties hereto that both items in controversy are composed in chief value of metal. The testimonial record discloses that neither of the items represented by collective exhibit 1 and illustrative exhibit 2 is used in a laboratory.

The question for determination by the court is whether the articles above described are instruments suitable for measuring the flowage of electricity, as determined by the collector of customs; if not, then they properly fall within the terms of said paragraph 353.

Plaintiffs cite a number of judicial authorities to support their claim that the articles in controversy are neither intended nor suitable for measuring the flowage of electricity. The following two cases relied upon by plaintiffs are briefly considered:

*Lucas Electrical Services, Inc., and Frank J. Eberle Co.* v. *United States*, 36 Cust. Ct. 209, C.D. 1776. It was there held that certain ammeters, which were designed and fitted for use exclusively on Jaguar motorcars for the purpose of indicating whether the battery is charging or discharging electricity, but which did not measure the flow of electricity, were improperly classified as instruments or devices suitable for measuring the flowage of electricity.

*Agfa Ansco Corp.* v. *United States*, 5 Cust. Ct. 50, C.D. 368. The court there held that certain mechanism used to measure electrically the resistance of dry emulsion for laboratory tests were not devices used to measure the flowage of electricity. In the course of our opinion, we said:

\* \* \* The fact that there may be a complete electrical circuit is immaterial in view of the fact that the primary function of the device is merely to measure resistance and not to measure the flowage of electricity.

The Government here contends that "The term 'flowage of \* \* \* electricity' includes all phases of such flowage and any device or mechanism intended or suitable for measuring any phase of such flowage, such as an ammeter, voltmeter, or a galvanometer, would therefor [*sic*] come within the purview of paragraph 368 as modified, *supra*," citing *Ferranti, Ltd.* v. *United States* (C.C.) 69 Treas. Dec. 609, T.D. 48242, and *Westinghouse Electric & Manufacturing Co.* v. *United States* (C.C.) 68 Treas. Dec. 837, T.D. 48049.

In the *Westinghouse* case, the court held that a galvanometer was an instrument intended or suitable for measuring the flowage of electricity.

In the *Ferranti* case, *supra*, certain ammeters and voltmeters were held to be properly classifiable as instruments or devices intended or suitable for measuring the flowage of electricity.

In the above two cases cited by the Government, the testimony satisfied the court that the articles in controversy did, in fact, measure the flowage of electricity.

In the case now before us, the testimony of the only witness who appeared is not contradicted or refuted in stating that neither of the instruments in controversy is designed or intended for use in measuring the flowage of electricity. The Toho tester is used to indicate voltage and current, both of which are components of electricity, or to determine resistance. The meter has many applications, such as determining the frequency of radio signals in a grid dip meter, frequency of radiation energy, proper operating conditions of a tube, and several other uses in electronic devices.

The testimony of Lichterman brings this case more in harmony with the decisions in the *Lucas* and *Agfa* cases, *supra*. Here, as there, the instant devices indicate the *presence* of electricity but do not *measure the flowage* thereof.

We have examined other cases cited by adversary counsel in their briefs but find it unnecessary to review them here.

Upon the undisputed testimony of the only witness who appeared herein and for the reasons stated, we find and hold that the subject merchandise is not intended or suitable for measuring the flowage of electricity within the meaning of paragraph 368 of the Tariff Act of 1930, as modified, *supra*, but consists of articles having as an essential feature an electrical element within the meaning of paragraph 353 of said act, as modified, *supra*, for which duty at the rate of 13¾ per centum ad valorem is provided. That claim in the protests is, therefore, sustained. The claim for classification in said paragraph 353, as modified, as radio or television apparatus is found to be unsupported and is, therefore, overruled.

Judgment will issue in accordance with the views above expressed.