(Reap. Dec. 10323)

NATIONAL CARLOADING CORPORATION *v.* UNITED STATES

Entry No. 988947.

(Decided on rehearing [Reap. Dec. 10055] August 29, 1962)

*Lawrence & Tuttle (Barnes, Richardson & Colburn* by *Edward N. Glad* and *Hadley S. King* of counsel) for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon, Sheila N. Ziff*, and *Samuel D. Spector*, trial attorneys), for the defendant.

DONLON, Judge: This appeal for reappraisement is before me on rehearing of *National Carloading Corporation* v. *United States*, 47 Cust. Ct. 419, Reap. Dec. 10055. The merchandise consists of spark plugs, imported from England in May 1959, which were appraised on the basis of foreign value. Plaintiff claims that appraisement should be at export value under section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54521.

The first issue, then, is as to the correct basis of appraisement.

The trial judge, after the first trial, found that spark plugs which are not classifiable as automobile parts for duty purposes under the Tariff Act of 1930, are likewise not automobile parts, such as appear on the final list of articles published by the Secretary of the Treasury, to be valued in accordance with section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54521), and that, therefore, these spark plugs should be appraised under new valuation section 402 of the Tariff Act of 1930, as amended, as items of merchandise not on the final list.

On review of the entire record, including the record adduced at Los Angeles on February 1, 1962, I find that the term "automobile parts" has the same meaning wherever it is found in the Tariff Act of 1930 and amendments thereto; that spark plugs which have been held not to be classifiable, for duty purposes, as automobile parts under paragraph 369(c) of the 1930 act, *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136, are likewise not automobile parts for purposes of the valuation on which assessment of duty is made.

Notwithstanding such a finding made by the trial judge, he nevertheless affirmed the appraised values, on the finding that plaintiff had failed to prove what the export value of these spark plugs was. Thereafter, he granted plaintiff's motion for rehearing, in order that further evidence as to export value, under new section 402(b) as amended, might be adduced. For such purpose, the case came on for trial in Los Angeles on February 1, 1962.

On the completed record, following such trial, it appears that these spark plugs were imported from England on May 12, 1959. The several items of merchandise were invoiced, entered, and appraised, as follows:

|  | Invoiced and entered | Appraised |
|---|---|---|
| Standard spark plugs | $0.20 | £0–2–1.42 |
| Platinum spark plugs | 1.05 | £0–7–4.91 |
| Silver spark plugs | 0.25 | £0–2–5.90 |
| Racing spark plugs | 0.75 | £0–5–5.45 |
|  | each, plus packing | each, plus cost of cases |

Mr. Fritz Warren, president of Lodge Spark Plug Co., Los Angeles, the importer, testified at the first trial. His testimony was summarized in Judge Johnson's opinion in *National Carloading Corporation* v. *United States, supra*, as follows:

His firm has had an exclusive contract with the manufacturer of the spark plugs involved herein since August 1, 1957, which contract was to run for 5 years. Under the contract, the importer is given the exclusive right to import and sell Lodge spark plugs in the United States, except to the aviation industry. The only other firm importing Lodge spark plugs is Trans-World Engineering, which imports the shielded type and sells them for aircraft use. It is estopped from bringing in nonshielded spark plugs. The importer does not sell to Trans-World's customers nor does the latter sell to importer's customers. While the importer sells shielded spark plugs to marine and industrial users, none of the merchandise involved herein is of this type.

According to Mr. Warren, the prices which the importer paid are the invoice prices. Such prices have not varied since February 1958 to the present, nor do they vary with respect to the quantity purchased.

Mr. Warren stated also that the officers and directors of the importing firm are not in any way related to the officers and directors of Lodge Spark Plug, Rugby, England, the manufacturer.

The defect in testimony, which Judge Johnson noted, was that plaintiff had failed to prove that the sales thus described fairly reflected the market value of the spark plugs in the "ordinary course of trade," as defined in section 402(f)(2), as amended. There was no showing of "conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement," as Judge Johnson noted.

At the second trial, Mr. Warren again testified. He said that he became president of Lodge Spark Plug Co., Los Angeles, on August 1, 1957. Previously he had worked for British Auto Parts, United States distributor of spark plugs. Some 4 months before he became president of Lodge Spark Plug Co., Los Angeles, British Auto Parts had negotiated with Lodge Plugs, Ltd., Rugby, England, to purchase Lodge Spark Plug Co., Los Angeles, which was a subsidiary of the Rugby company. In these negotiations, Lodge of Rugby agreed that for 1 year it would continue to sell spark plugs to Lodge of Los Angeles, at the same prices as the prices at which it was then selling spark plugs to Lodge of Los Angeles. Mr. Warren participated in these negotiations, which resulted in agreed prices of 20 cents for regular plugs, $1.05 for platinum plugs, 75 cents for racing plugs, and, as previously developed of record, 25 cents for the silver-electrode plugs. (R. 33.) These were the highest prices Lodge of Los Angeles was willing to pay; but it agreed to bear the cost of cataloging, advertising, and warranties. (R. 34.)

Mr. Warren further testified that he has been a distributor of auto parts since 1949, and has been familiar during that period with market conditions as to competitive spark plugs manufactured in England for export to the United States. At one time he negotiated for distributor's rights to British spark plugs manufactured by two Lodge competitors, namely K.L.G. and Wypac of England. He was familiar with their prices in 1957, 1958, and 1959. Wypac sold its spark plugs for less than the Lodge plugs. Wypac is a smaller company than Lodge of Rugby. K.L.G. spark plugs sold at the same prices as Lodge spark plugs. (R. 36.)

This is the substance of Mr. Warren's testimony. However, he also identified the signature of Mr. Harry Cock, with which he said he was familiar, on an affidavit that was received in evidence as plaintiff's exhibit 2. (R. 37.)

Mr. Cock's affidavit recites that for 13 years, the last 7 as secretary, he has been associated with Lodge Plugs, Ltd., Rugby, England. He knows the policies and prices which guide his company in sales for export to the United States and to other countries. Quantity discounts, which are part of sales policy for home consumption, are not a consideration in export sales. Mr. Cock identified Champion Spark Plug Co., Ltd., A.C. Delco Division of General Motors, Ltd., and K.L.G. Spark Plugs, Ltd., as competitive manufacturers of spark plugs in England. "All of these manufacturers operate on the same selling policies for consumption in England" as Lodge of Rugby. Champion and Delco, being wholly owned subsidiaries of American parent companies, do not export to the United States. K.L.G. exports spark plugs to the United States to one or more selected wholesalers, as does Lodge of Rugby. There is no restriction on the disposition or use of the Lodge spark plugs which are sold for export to the United States. For at least 2 years prior to May 1959, the prices of the Lodge spark plugs for export were uniform, those prices being the invoice prices of this merchandise. Export prices to other countries might be higher or lower than prices for export to the United States, depending on market conditions.

Plaintiff contends that the evidence offered on rehearing establishes that the sales to Lodge Spark Plug Co., Los Angeles, were in the ordinary course of trade and that the prices paid fairly reflect the market value of the spark plugs. Defendant finds the proofs are inadequate.

Not many cases have yet been decided which construe the new valuation provisions of the Customs Simplification Act of 1956. As Judge Johnson pointed out, and I agree, the language we are here construing is new language. We must assume that Congress intended to require proofs of value responsive to its intention expressed in this new language.

Mr. Warren's testimony and Mr. Cock's affidavit do not set forth evidentiary facts, from which the court may make findings, but merely state conclusions which plaintiff asserts should be found. This is not the proof required. Our court of appeals discussed the distinction between "evidentiary facts" and "ultimate facts" in *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, and *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

Plaintiff argues that the testimony in this case stands unrebutted. (Brief, p. 6.) The question is, what are the proven facts that might be rebutted. Mr. Warren stated that competitive exports were sent to selected purchasers in the United States; but he stated this as a conclusion and named no purchasers. Competitive merchandise was not sufficiently described so that the court could determine whether it, in fact, truly was of the same class or kind as that under appraisement. Competitive prices were stated as the same as the invoice prices in issue. No prices were stated. Not a single competitive sale was identified.

I find no substantial evidence of record to support a finding that the invoice prices of the spark plugs in this reappraisement fairly reflect market value in the ordinary course of trade for export to the United States. Upon rehearing, therefore, as at the first trial, the appraised values are sustained for failure of plaintiff's proofs. *Kobe Import Co.* v. *United States*, *supra*.

I find as facts:

1. That the merchandise herein consists of so-called Lodge spark plugs of various types, imported from England, and entered for consumption on May 12, 1959.

2. That the merchandise was appraised as automobile parts appearing on the final list of articles published by the Secretary of the Treasury for valuation in accordance with section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That spark plugs are not automobile parts, as specified in the final list of articles to be appraised under section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, either for assessment of duty or for valuation for such assessment.

4. That, at the time of exportation, such merchandise was sold for export to the United States to one selected purchaser, the importer herein, at the invoice prices.

5. That the record does not establish what the normal trade practices were for sale of British spark plugs of the same class or kind for exportation to the United States, nor does it establish that the prices paid by the importer fairly reflect market value of the merchandise.

I conclude as matters of law:

1. That the merchandise involved herein is not included in the final list of articles to be valued in accordance with section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, and hence is to be valued under section 402, as amended.

2. That the record is insufficient to establish a dutiable value for this merchandise in accordance with the provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That plaintiff has not borne its burden of proof as to values for this merchandise, other than those found by the appraiser. Therefore, by operation of law, 28 U.S.C., section 2633, the values of the respective items of merchandise are the appraised values.

Judgment will be entered accordingly.